No. 19-20360

# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

JOHN ALLEN, JR.; LAWON ALLEN, JR.; ESTATE OF JOHN ALLEN, SR.,

Plaintiffs - Appellants

v.

JUSTIN HAYS; CITY OF HOUSTON; TYLER SALINA,

Defendants - Appellees

---

On Appeal from
United States District Court for the Southern District of Texas

Honorable Judge Lynn N. Hughes

4:18-CV-171

---

BRIEF OF APPELLANT

John Allen, Jr; Lawon Allen, Jr. Estate of John Allen, Sr.

---

i

SUBMITTED BY:

Debra V. Jennings
6140 Highway 6
Missouri City, TX
77459-3802

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| City of Houston | Robert Higgason of City of Houston Houston, TX |
| City of Houston | Dennis Jackson of City of Houston Houston, TX |
| Justin Hays | Robert Higgason of City of Houston Houston, TX |
| Justin Hays | Dennis Jackson of City of Houston Houston, TX |
| Tyler Salina | Robert Higgason of City of Houston Houston, TX |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| John Allen | Debra Jennings Missouri City, TX |
| Lawon Allen | Debra Jennings Missouri City, TX |
| Estate of John Allen, Sr. | Debra Jennings Missouri City, TX |

S/Debra V. Jennings
Attorney of record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Mr. John Allen, respectfully requests oral argument. This appeal will require the Court to interpret the law establishing Rule 12(b)6 motion to dismiss and the related Rule 56 motion for summary judgment when the trial court considers extrinsic evidence whether the defendants are entitled to qualified immunity on these facts. This appeal will require the interpretation of the pleading requirements for qualified immunity and Monell claim. Oral argument will assist the Court in resolving these issues.

# TABLE OF CONTENTS

Contents                                                                          Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT............................................ iv

TABLE OF CONTENTS............................................................................ v

TABLE OF AUTHORITIES ................................................................. 1

JURISDICTIONAL STATEMENT ........................................................ 5

STATEMENT OF THE ISSUES............................................................ 4

STATEMENT OF THE CASE ............................................................. 5

SUMMARY OF THE ARGUMENT ..................................................... 12

ARGUMENT ................................................................................ 14

  STANDARD OF REVIEW............................................................. 32

CONCLUSION ............................................................................. 37

CERTIFICATE OF SERVICE ........................................................... 39

CERTIFICATE OF COMPLIANCE................................................... 41

# TABLE OF AUTHORITIES

Cases ...............................................................................................Pages(s)

Anderson v. Creighton, 483 U.S. at 640, 107 S. Ct. 3034  (1987)
…………………………………………………………………….20, 23.

Anderson v. Pasadena Indep. Sch. Dist. 184 F. 3d 439, 443(5th Cir.
1999) ……………………………………………………………………… 21

Ashcroft v. Iqbal, 556 U.S. 662, 571-72 (2009)..............4,15,23,33

Beddall v. State St. Bank & Trust Co.,137 F. 3d 12, 17 (1stCir. 1998)................ 28

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)............................ 15, 23,33.

Brown v. Callahan, 623 F. 3d 249, 253 (5th Cir. 2010) .................................. 19, 37

Carroll v. Fort James Corp., 470 F. 3d 1171, 1173 (5th Cir. 2006)
…………………………………………………………………………….4

Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F. 3d  273,
284                            (5th                            Cir.
2002) ........................................................................................ 37

Crowe v. Hoffman, Civil Action No. 12-687m, 2013 WL 357006 (E.D.
La.                    Jan.                    29,                    2013)
…………………………………………………………………………..26

Drain   v.  Galveston  County,  999  F.  Supp.  929,  933  (S.D.  Tex.  1998)
…………………………………………………………………………16, 34

Elliot v. Perez, 751 F. 2d 1472 1479 (5th Cir. 1985) Farmer v. Brennan, 511 U.S.
825, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994 .................................................21, 34

Gentilello  v.  Regge,  627  F.  3d  540,  544  (5th  Cir.  2010)
…………………………………………………………………………..14

Graham        v.        Connor,        490        U.S.        386,396        (1989)
…………………………………………………………………………..19

Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.
3d 305, 329 (5th Cir. 2002)........................................................... 21

Heaney v. Roberts, Civil Action No. 14-2104, 2015WL 418177, at 3 n.1 (E.D. La. Jan. 30, 2015 ................................................ 15,16,26

Kaiser Aluminum & Chem Sales, Inc. v. Avondale Shipyards, Inc. 677 F. 2d 1045, 1050 (5th Cir. 1982)........................................................................34

Jackson v. Procunier, 789 F. 2d 307, 309 (5th Cir. 1986)................................ 14,32

Johnson v. City of Shelby, Miss., 135 S. Ct. 346 (2014) ........................................24

Ludwig v. Anderson, 54 F. d 465, 470 (8th Cir.) fn. 3 ......................................... 34

Malley v. Briggs, 47 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed. 2d271 1986) ........37

Mitchell v. Forsyth, 472 U.S. 511 (1985).........................................4

Monell v. Department of Social Services, 436 U.S. 658 (1978) ...5, 13,16, 23, 25, 31

Oliver v. Scott, 276 F. 3d 736, 740 (5th Cir. 2002) ........................................ 16, 32.

Ontiveros v. City of Rosenberg, 564 F. 3d at 379 (5th Cir. 2009) ……………………………………………………………….20.

Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed. 2d 565 (2009)……………………………………………………………….36

Peterson v. City of Fort Worth, Tex., 588 F. 3d 838, 847 (5th Cir. 2009) ............23

Piotrowski v. City of Houston, 237 F. 3d 567, 578 (5th Cir. 2001)..................24, 35.

Ramming v. United States, 281 F. 3d 158, 161 (5th Cir. 2001) ........................... 32

Ramirez v. Knoulton 542 F. 3d. 124,129 (5th Cir. 2008)................................... 19

Reese v. Anderson, 926 F. 2d. 494, 500 (5th Cir. 1991) ……………………………………………………………….16

Regina Harris v. Ron Hickman, Civil Action No. 4:17-cv-02830 (2017) ……………………………………………………………….30

Reynolds v. CB Sports Bar, Inc. 623 F. 3d 1143, 1146-47 (7th Cir. 2010) ............................................................................4

Rice v. ReliaStar Life Ins. Co., 770F. 3d 1122, 1130 (5th Cir. 2014) ……………………………………………………………...20

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001)……………………………………………………………………………36

Schultea v. Wood, 47 F. 3d 1427, 1433 (5th Cir.1995) ................. 35

Rockwell v. Brown, 664 F. 3d 985,991(5th Cir. 2011) ………………………………………………………………………………19

Stroik v. Ponseti,35 F. 3d 155, 157 (5th Cir. 1994) ……………………………… ……………………………………………16,33

Tennessee v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L.ED. 2d 1(1985) ………………………………………………………… ….6,17,33.

Thompsons v. Upshur County., 245 F. 3d 447, 456 (5th Cir. 2001) ………………………………………………………...……………..…20,36

Tolan v. Cotton, 134 S. Ct. 1861,1866 (2014) ……………………………………………………………....…18

United States. Parratt v. Taylor, 451 U.S. 527,(1981)...................................................................35

Welch v. Laney, 57 F. 3d 1004,1009 (11th Cir.1995) ……………………………………………………………....…2

## Statutes

42 U.S.C.§ 1983 ....................................................16,21,23,25,33,

## Rules

Fed. R. Civ. P. 56

Fed. R. Civ. P 12(b) (6)

Fed. R. Civ. P. 12 (c)

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter under 28 U.S.C. §1331. Under 28 U.S.C §1291, this Court has jurisdiction over this appeal from the district court's granting of Appellees' Motion to Dismiss based on the denial of the Appellants' excessive force claim. Mitchell v. Forsyth, 472 U.S. 511 (1985) and Ashcroft v. Iqbal, 556 U.S. 662, 571-72 (2009). On appeal, the court reviews a dismissal under Federal R. Civ. Procedure 12(b) (6), de novo. Carroll v. Fort James Corp., 470 F. 3d 1171, 1173 (5th Cir. 2006). A Plaintiff may be allowed to supplement the complaint with additional facts to show that the dismissal was improper; the additional facts are allowed as long as they are consistent with the complaint. Reynolds v. CB Sports Bar, Inc. 623 F. 3d 1143, 1146-47 (7th Cir. 2010). The fee status of this appeal incorrectly indicates that the filing fee has not been paid. ROA.7 The clerk of the district court corrected this entry. The docket sheet does not reflect the correct. ROA.7

# STATEMENT OF THE ISSUES

I.    Qualified immunity at the motion to dismiss stage, is based on the pleadings alone and is not available to an officer when the pleading indicates the officer acted in bad faith shoots an unarmed citizen who objectively reasonably poses no threat of harm to the officer, himself or others

II.   The court improperly granted the Motion to Dismiss by converting the 12(b)6 Motion to Dismiss, to a Motion for Summary Judgment at the preliminary stage in the proceeding:

a.   by failing to evaluate the case only on the pleadings and accepting Plaintiffs' factual allegations as true at this juncture.

 b.   by considering extrinsic evidence but failing to put the Plaintiffs on notice of the court's intent to convert Defendant's Motion to dismiss on 12(b)6 grounds to a motion for summary judgment and affording plaintiffs the opportunity to respond in accordance with Rule 56;

 c.  by failing to provide Plaintiffs prior notice that the unauthenticated video the defendants provided to the court only on February 14, 2018, would be considered in the court's ruling; and

d.  by failing to allow Plaintiffs limited discovery on the issues of qualified immunity and claim and failing to allow Plaintiffs to take any depositions, including depositions of Officer Justin Hayes and obtain his recorded statements and failing to allow Plaintiffs reasonable amount of discovery against the City of Houston to ascertain the Monell information, demonstrating the nexus between the statistics and this particular case.

## STATEMENT OF THE CASE

No gun was every the found on or near Mr. John Allen's person on November 4, 2015, after he was shot and killed by Houston Police Officer Justin Hayes. In fact,

no gun was ever found in the vehicle at all until weeks later while the vehicle was in police custody. With no stated purpose for the stop and with his gun raised, Officer Justin Hayes approached Mr. John Allen, Sr. and his female companion during a routine traffic stop for what was conflicting reasons: running a red light or stop sign and/ or a broken taillight. ROA.147, 461. The video does not support the reason for the stop since it depicts a vehicle with working taillights.

On November 4, 2015, Mr. John Allen [1] was driving his 1999, Ford F-150 truck at 12:42 am in the 3200 block of Drew Street. ROA.146. Shanell Atterberry was riding as a passenger inside the truck with Mr. Allen. ROA.146 Mr. Allen was stopped by Defendant City of Houston police officers, Justin Hayes and Tyler Salina acting under color of law, wearing Houston Police issued uniforms for an alleged broken taillight and running either a red light or stop sign. ROA.146 Mr. Allen pulled over and came to a complete stop of his vehicle in a safe place. ROA.147 Atterberry had just entered Mr. Allen's truck no more than a minute or so before the stop. ROA.147

Defendant, Justin Hayes did not state the reason for the traffic stop. ROA.147 This was a basic traffic stop for allegedly running a red light or stop sign and a busted taillight. ROA.147 Although it is abundantly apparent that Mr. Allen's truck did not have a busted tailing, based on the bodycam footage of Hayes, and his partner Salina. ROA.147 The reports conflict as to whether Mr. Allen ran a red-light or stop sign.

ROA.147 In any event, both defendants, Justin Hayes and Tyler Salina, initiated the traffic stop for a Class C, misdemeanor, traffic violation. ROA.147 The Defendants, Justin Hayes, and Tyler Salina got out of their patrol vehicle and approached the pickup truck on the passenger and driver side with service issued City of Houston firearms in the low ("ready position") pointed at the driver, John Allen. ROA.147 Justin Hayes did not identify himself, ask for Allen's name, state the reason for the stop or communicate in a manner to de-escalate the traffic stop. ROA.147 Rather, the traffic stop was inconsistent with their Texas Commission on Law Enforcement training and basic traffic stops. ROA.147 Defendants, Justin Hayes, and Tyler Salina approached the passenger and driver side of Mr. Allen's truck, as mentioned with pointed guns. ROA.147

Defendants, Justin Hayes, and Tyler Salina were not acting within the scope of their discretionary authority while on the beat. ROA.148. At the time he was shot and killed Mr. Allen, Mr. Allen did not point any weapon, including a gun at Hayes or anyone else or threaten him in any manner. ROA.148 Defendants Justin Hayes falsely accused John Allen of pulling a gun out of his pocket and pointing a gun at him. ROA.148. The video and bodycam indicate otherwise. ROA.148 No gun is ever pulled out or pointed at Defendant Justin Hayes. ROA.148. Defendant, Tyler Salina asked John Allen asked Mr. Allen to roll down his window, but his power window would not roll down because it was non-operational. ROA.148 Defendant Justin Hayes approached the truck on the passenger side after it came to a complete stop.

ROA.148 The passenger side window was rolled entirely down, as it was the only functioning window. ROA.148 Mr. Allen attempted to give the officer his identification from his wallet. ROA.148 Defendant Hayes responded to Mr. Allen question in an agitated manner using cursive words and demanded that Mr. Allen put the window down. ROA.148 He then instructed Allen to stop moving and get his foot off the gas. ROA.148 Hayes proclaimed [that] what Mr. Allen was taking from his pocket was not a wallet, when in fact, it was a wallet. ROA.149, 420

Mr. Allen insisted that he was giving the officer his wallet. RO.149, 420 Defendant Hayes gave contradictory commands, one command to stop reaching and another command to get his hands out of his pocket. ROA.149, 420 As Mr. Allen began to comply with Hayes's commands to get his hand out of his pocket and stop reaching, Hayes shot him. ROA.149, 420 At about the same time, Ms. Artteberry, Mr. Hayes's passenger, can be heard pleading with Hayes not to shoot Mr. Allen. ROA.149. Artteberry] stated: "No, don't shot" as shots were fired ROA.420, 535 Twenty-three seconds into the stop, Defendant Hayes fired six gunshots from his City of Houston, Houston police's service issued Smith & Wesson revolver at Mr. Allen striking him five times. ROA.149,568 Three in the abdomen chest area, one in his right hand, and another in the elbow, without explanation. ROA.149, 568

Hayes' partner on the scene, Salina, did not understand why Hayes shot Mr. Allen, as indicated on his call to dispatch to report the shooting, it was minutes later

before Salina understood the reason Hayes shot Mr. Allen. ROA. 149 The lack of

knowledge caused Salina to hesitate as he tried to explain to the dispatch officer why

the shots were fired. ROA.149 It was only after, Hayes chimed in that he was able

the provide information about the shooting to dispatch. ROA.149 During the

dispatch report was the very first mention of Mr. Allen having a gun throughout the

encounter. ROA.150 Knowing that Mr. Allen needed medical attention, as stated in

the Internal Affairs Investigator's report; the dispatching officer requested a minute

after the shooting for a vehicle license plate check first, not Emergency Medical

Services. ROA.150 Officer Alton Baker arrived on the scene with other officers,

Hurban, Diego, Morelli, available to cover any officer willing to medically assist

Mr. Allen, in the event he may threaten harm to anyone. ROA.150 Since the driver's

door was locked and the power window would not roll down, Officer Baker chose

to break the driver door window glass, instead of unlocking the door from the

passenger's side or using the keys from the ignition in a safe manner. ROA.150

Once the driver's side door was unlocked, and the door opened, and Mr. Allen

could be observed with blood on his shirt, moving his head, and breathing. ROA.150

Officer Morelli pulled Mr. Allen to the ground on his face, causing additional

injuries including contusions and lacerations to his face and chin, without rendering

any medical aid at all. ROA.150 According to officers on the scene, the defendants

placed Mr. Allen in handcuffs, after he was pulled to the ground since he was still

alive and according to officers still posed a continuing threat. ROA.150  A blood-smeared black wallet containing his Department of Veteran's Affairs identification alone with a Chase Debit card and (not a gun) was found on Mr. John Allen's person. ROA.150 Mr. Allen lost control over the vehicle, after five gunshot wounds, and the truck lunged forward slammed into a tree. ROA.150

 Noteworthy, Defendant Tyler Salina who was in closer proximity to Mr. Allen, on the driver side never saw a gun or found the need to fire one gunshot or a taser at the compliant, John Allen. ROA.150 Defendant Hayes falsely told HPD investigator that Mr. Allen tried to pull a gun out of his right pocket, that he was able to see that it was a white-handled. ROA.151 The video recordings, including the body-camera, does not show that John Allen ever pulled a gun out on officer, Justin Hayes or Tyler Salina or anyone. ROA.151 The video recordings do not show that John Allen posed a viable threat of harm to Defendants Justin Hayes, Tyler Salina or Shanell Arterberry. ROA.151 A blood [LL2] -smeared wallet and (not a gun) was the only thing found on Mr. Allen's person. ROA.151 After the shooting, officers Justin Hayes, Tyler Salina, Alton Baker, and J. Zimmerman and M. Hurban arrived and approached the truck. ROA.151

 Mr. John Allen's body was grabbed and pulled out of the vehicle, causing him to fall to the ground filed with the shattered glass, by the officers with blatant disregard

for his health and medical needs. ROA.152. Mr. Allen was handcuffed next. ROA.152

Officer Alton Baker, who arrived at the scene, was also unable to see any weapons. ROA.152, 467 Officer Zimmerman did not observe the suspect's gun.  ROA. 465. Officer J.G. Lopez did not see the suspect's weapon. ROA.471 Additionally, Officer Matthew J. Hurban noted that he observed the suspect's hands clear of any weapons and his hands to be on his lap. ROA.152, 469 The truck was also cleared of any weapons while on the scene. ROA.152 Officer Hurban observed John Allen to be still breathing at this time and transitioned to the driver's side of the vehicle. ROA.152 Over four and a half minutes elapsed before the officers called the fire department, it is unclear why they did not call the ambulance. ROA.152 There was a hunt for the alleged weapon that went on for the duration of the length of the body cam video footage before its filing discontinued, 6;15 (Hayes-body-cam)l and 7:31 (Salina body-camera), but no weapon was ever found. ROA.152

In response to the inquiry of the weapon location. ROA.152 Directed at defendant Hayes, he indicated the last place he saw it was while Mr. Allen tried to pull a gun out of his right pocket, meaning he never actually pulled the gun out of his pocket, rather attempted. ROA.152, 436 The only place the gun could be would be where it was last seen, in his pocket. ROA.153 Once Mr. Allen was on the ground, he was searched, but no gun was found on his person ROA.153. Ratifying Justin Hayes'

11

conduct, City of Houston gave Justin Hayes an award and citation and a pay increase for "courage and determination to stop a dangerous suspect wielding a deadly weapon" for the Nov. 4, 2015 shooting death of Mr. John Allen. ROA. 478, 594.

As Mr. John Allen, Sr., a veteran of the United States Army, sat in his truck his last words on this earth he would ever say to anyone, "I'm giving you my wallet. Here's my wallet." ROA. 535, 457, 459 Within twenty-three seconds of Officer Justin Hayes approaching Mr. Allen's truck, and just mere seconds after Mr. Allen attempted to proffer his wallet, and Officer Justin Hayes proceeded to shoot Mr. Allen five times in the chest, abdomen, hand, and elbow at a complete stop. ROA. 568, 149, 535. Officer Hayes and City of Houston filed a motion to dismiss, and the trial court entered a take nothing--judgment dismissing the complaint with prejudice., which was a final adjudication on the merits.

## SUMMARY OF THE ARGUMENT

Plaintiffs pled sufficient plausible facts in their live complaint to support their claims against the defendants for excessive force, wrongful death, and Monell claims on its face in this fatal shooting resulting in the death of an unarmed citizen during a routine traffic stop that must be accepted as true. A viable Fourth Amendment violation alleging the unreasonable use of excessive force, and Monell claim has

been sufficiently pled at this juncture. The court must deny the motion to dismiss the First Amended Complaint. Under a summary judgment standard, the court must view all evidence in the light most favorable to the non-movant, plaintiff, and all resolve all issues of disputed material facts on behalf of the non-movant. Further, the court should have allowed the Plaintiffs to conduct discovery and leave to amend the complaint after receipt of the discovery. ROA. 364

Before the use of extrinsic evidence, the district court should have in fairness provide advance notice of its intent to use extrinsic evidence, convert the motion to dismiss to a motion for summary judgment and afford Plaintiffs the right to respond pursuant to Rule 56, including the right to supplement responses. Discovery, including the depositions of the shooting officers and officers at the scene, their oral statements, affidavits, and authenticated body camera videos should be produced to Plaintiff. ROA.590, 362 While only the First Amended Complaint is determinative of the motion to this dismiss. If the court is considering outside extrinsic evidence, this appellate court should in its de novo review have the benefit of reviewing an authenticated copy of the body camera videos from the passenger side and driver side to review along with the First Amended Complaint. Plaintiffs request the court to allow them to supplement with authenticated copies of the videos reviewed by all parties before submission to the court.ROA.610-612

Dismissal with prejudice with a take-nothing judgment is inconsistent with Rule 12(b) 6 and Rule 56. ROA.590

# ARGUMENT

Courts Evaluate Pleadings alone in deciding a Rule 12(b)6 motion to Dismiss

At this stage in the proceeding, a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. See Jackson v. Procunier, 789 F. 2d 307, 309 (5th Cir. 1986).

The central issue in a Rule 12(b)6 motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief — Gentilello v. Regge, 627 F. 3d 540, 544 (5th Cir. 2010). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct at 1949 (2009).

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 demands "more than labels and conclusions a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556

U.S. 6662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Here, the First Amended Complaint of Mr. Allen is the operative pleading to be evaluated. ROA. 140-179 The First Amended Complaint provides fair notice of the plaintiffs' claims, and the facts alleged sufficiently show a plausible claim for relief. Heaney v. Roberts, Civil Action No. 14-2104, 2015WL 418177, at 3 n.1 (E.D. La. Jan. 30, 2015). Like in Heaney, the defendants Hayes and City of Houston contend that Plaintiff's complaint is deficient under the pleading principles of Ashcroft v. Iqbal, 556 U.S 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544(2007).

This contention lacks merit. Defendants' argument fails to recognize, and the trial court failed to recognize that the court must accept Mr. Allen's' factual allegations as true at this juncture. If Mr. Allen's allegations are accepted as true, and they are, then he has stated a claim for relief under the Fourth Amendments, wrongful death and Monell. Whether Mr. Allen's "allegations are in fact truthful, and whether any of his constitutional rights were actually violated in light of Defendant's side of the story, are not questions appropriate for a Rule 12(b)(6) motion". See, Heaney v. Roberts, Civil Action No. 14-2104, 2015WL 418177, at 3 n.1 (E.D. La. Jan. 30, 2015)

When making this inquiry; a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts" Oliver v. Scott, 276 F. 3d 736, 740 (5th Cir. 2002). "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment". Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.ED. 2d 1(1985). A deadly force complaint brought by a free citizen, such as Mr. Allen's, should be brought under §1983 and must be analyzed according to Fourth Amendment standards. See Stroik v. Ponseti,35 F. 3d 155, 157 (5th Cir. 1994) cert. denied, 514 US. 1064, 115 S.Ct. 1692, 131 L.Ed. 2d 556 (1995); Reese v. Anderson, 926 F. 2d. 494, 500 (5th Cir. 1991); Drain v. Galveston County, 999 F. Supp. 929, 933 (S.D. Tex. 1998).

Here, the court had construed Mr. Allen's complaint liberally in favor of the Plaintiff, and it would have indeed reached a different conclusion. The salient facts are that Mr. Allen and his companion were pulled over for running a red light and a busted taillight Officer, Hayes approached the passenger side of Mr. Allen's truck with his gun raised, while officer Salina approached the driver side. Due to a malfunctioning driver side window, Mr. Allen could not roll it down to communicate. In the twenty-three second traffic stop, a free citizen, Mr. John Allen, was stopped and never advised of the purpose for which he was being stopped. After

Allen came to a complete stop, he reached into his pocket to retrieve his ID/Driver's License from a square-shaped wallet he pulled his wallet out, for purposes of identifying himself, deadly force was applied by Officer Hayes, and he fatally shot Allen five times in the chest, abdomen, hand, all while Mr. Allen's--female companion watched. ROA. Officer Hayes' conduct constitutes that which: is "apprehension by the use of deadly force and is a seizure subject to the reasonableness requirement of the Fourth Amendment." See, Tennessee v. Garner 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.ED. 2d 1(1985). Therefore, the trial court should have concluded that plaintiffs plausibly pled that the conduct of Hayes violated Mr. Allen's rights under the Fourth Amendment.

In Allen, the trial court mischaracterized the evidence in the Court's Opinion on Dismissal, as it relates to Officer Hayes's state of mind: "Hayes thought that he saw the handle of a gun in Allen's pocket, so he shot him" [2]. ROA.333 Allen actually had a wallet in his pocket, but Hayes did not know and could not have known that at the time. ROA.333 Contrary to the court's conclusion regarding Hayes' state of mind, Hayes's own affidavit which was signed within 48 hours after his fatal shooting of Mr. Allen, did not state he thought he saw the handle of a gun in Allen's pocket. ROA. 462 Rather, Hayes stated: "the driver yelled out to me that he was reaching for his wallet, and at this point, I observe the grip of a small handgun in the driver's right hand. ROA.462, 536, 539-540, 436 "I observed the driver

holding the handgun in his right hand still partially inside of his pocket, and I then yelled to him that it was not a wallet he was pulling out and to stop." ROA.462, 536, 539-540 "The driver continued pulling the gun out of his pocket, and I then observed him bringing his arm up with the gun still in his right hand. ROA.462 Fearing that the driver was about to shoot my partner, the front passenger, or myself, I then leaned in through the open front passenger window and discharged my duty weapon towards the driver's chest, and abdomen are." ROA.462

No deposition testimony was ever taken of Hayes or allowed even through limited discovery. ROA.590 Where the court reached this conclusion that Hayes "thought" he had a gun is not evident in the record. ROA.462 More importantly, the subjective state of mind of the officer is irrelevant. "[Because] qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." Tolan v. Cotton, 134 S. Ct. 1861,1866 (2014) The district court dismissal of Mr. Allen's case on qualified immunity is based on an error of law.

The objective reasonableness of an officer's use of force is gauged by balancing the amount of forced used with the need for force. Ramirez v. Knoulton 542 F. 3d. 124,129 (5th Cir. 2008). In evaluating the objective reasonableness of force used under the particular facts and circumstance of a case, courts consider "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386,396 (1989). Reasonableness is evaluated "from perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving. Id. at 396-97. ROA. 378-379. Defendants contend deadly force was justified because Mr. Allen possessed a gun and pulled it from his pocket. Mr. Allen contends that he did not possess a gun, and he pulled a wallet from his pocket to identify himself at the traffic stop. ROA.379

"The excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the officer's use of deadly force." Rockwell v. Brown, 664 F. 3d 985,991(5th Cir. 2011). The use of deadly force is presumptively reasonable "when the officer has reason to believe that the suspect poses a threat of serious harm to the officers or to others." Ontiveros v. City of Rosenberg, 564 F. 3d at 379 (5th Cir. 2009) ROA.382,379

The right is "clearly established" when "[t]he contours of the right[are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Rice v. ReliaStar Life Ins. Co., 770F. 3d 1122, 1130 (5th Cir.

2014) Thompsons v. Upshur County., 245 F. 3d 447, 456 (5th Cir. 2001) (quoting Anderson v. Creighton, 483 U.S. at 640, 107 S. Ct. 3034 (1987). A reasonable police officer would understand that shooting six times at a citizen at a complete traffic stop while the citizen is reaching for his wallet and identification is excessive force and violates the Fourth Amendment.

Plaintiff's discovery was limited to the initial disclosure items requested explicitly by the court: internal affairs complaint, personnel file of Hayes and two body camera videos of Officer Salina and Hayes. Although received, none of the information could be used to respond to the converted Motion for Summary Judgment until the Motion for New Trial.

Plaintiffs requested to take the deposition of Officer Hayes and Salina. The request to take the depositions was denied. ROA. 364As such, Hayes' state of mind cannot be ascertained by the Court or anyone and is wholly irrelevant.

Even without the contradiction, at this 12(b) 6 stage in the proceedings, Allen's version of the facts, if taken as true, is that while attempting to reach for his wallet and retrieve his identification he was shot five times during a traffic stop, and therefore does not justify dismissal and a take-nothing judgment. That is, Mr. Allen estate asserts he died with his wallet and not a gun in his hand. ROA. 456 A fact that is taken as true does not justify a take-nothing judgment. A fact in a converted

summary judgment verified from the affidavits of the officers at the scene and an authenticated video. ROA.579-587 Furthermore, in the first paragraph of the document entitled "Opinion on Dismissal," the court indicated that Allen was "fishing for something." ROA.332 That "something" was in the shape of a square and was a flat object in Allen's pocket. Officer Tyler Salina, the lead officer who observed Mr. Allen during the traffic stop, notably did not fire one gunshot at Mr. Allen. In individual capacity Section1983 suits, the Fifth Circuit applies a heightened pleading standard, which requires Plaintiff to plead facts with particularity, focusing specifically on the conduct of the individual who caused the injury. See Elliot v. Perez, 751 F. 2d 1472 1479 (5th Cir. 1985) and Anderson v. Pasadena Indep. Sch. Dist. 184 F. 3d 439, 443(5th Cir. 1999). If some of the Plaintiffs' claims as pleaded do not meet the heightened pleading requirements for qualified immunity, courts will generally allow one chance to amend a deficient pleading before dismissing with prejudice. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F. 3d 305, 329 (5th Cir. 2002); Welch v. Laney, 57 F. 3d 1004,1009 (11th Cir. 1995) court should not have dismissed Plaintiffs' civil rights claim without leave to amend because county commissioners were potentially liable for sheriff's acts). When leave is necessary to amend, the plaintiffs' response should request that if the court grants the motion to dismiss, it should also grant the plaintiffs leave to amend. Plaintiffs made such request in its response to the motions to

dismiss. The court erred in denying the requests and entering a take-nothing judgment. The First Amended Complaint, here, overcame the officers' qualified immunity defense. ROA. 140-179 The complaint sufficiently satisfies the heightened pleading standard for the individual capacity §1983 suit against Officer Justin Hayes. ROA.140-179 Because the Plaintiffs plead facts with particularity, focusing specifically on the conduct of Officer Justin Hayes who caused the death of Mr. Allen by inflicting five gunshot wounds during a routine traffic stop for a broken taillight, running a red light. ROA. 568-569, 140-179 Allen challenges the court order, and argues that his pleadings sufficiently demonstrate that officers Hayes acted objectively unreasonable and violated Allen's clearly established Fourth Amendment rights by fatally shooting him five times while he was attempting to produce his identification and using excessive force firing the six gunshots at his person for a misdemeanor traffic violation.

Mr. Allen's pleading comports with the requirements of Rule 8(a) (2). ROA.140-179 Plaintiffs requested leave to amend in its Complaint in its Response to the motion to dismiss. The court denied the leave. Therefore, the trial court respectfully should have granted leave to amend Mr. Allen's complaint so that it is responsive to the issues raised by Defendants' motion to dismiss as well as in compliance with Rule 8 and the heightened pleading standards for qualified immunity.

In his Monell claim, Mr. Allen has provided in his First Amended Complaint, both fair notice of the nature of the claim and pled plausible factual allegations to support the claim. See, Ashcroft v. Iqbal, 556 U.S 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544(2007). ROA.140-179 The Monell standard is different. The court's dismissal of Allen's complaint on Monell grounds is based on an erroneous reading of Allen's complaint.

To establish municipal liability under §1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Peterson v. City of Fort Worth, Tex., 588 F. 3d 838, 847 (5th Cir. 2009)

A public entity may be sued directly where its customs, policies or practices "caused" the constitutional violation. Monell v. Department of Social Services, 436 U.S. 658 (1978) They usually relate to actual policies that are improper, longstanding practices of excessive force or other constitutional violations, or inadequate training of officers. The standard of proof is deliberate indifference. Courts define "deliberate indifference" as more than negligence but somewhat under intentional malfeasance-more akin to recklessness. In Johnson v. City of Shelby, Miss., 135 S. Ct. 346 (2014) the Supreme Court reversed a dismissal because it did not state the proper legal theory for the requested relied-the complaint failed to mention §1983 at all. The Court held that the plaintiff's complaint "stated

simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." Id. at 347 (emphasis added). Further, the Supreme Court held that when a complaint contains sufficient "factual allegations," a court should not grant a motion to dismiss "for imperfect statement of the legal theory supporting the claim asserted." Id. at 346 (emphasis original). Thus, to survive a motion to dismiss, [Allen] need only to plead facts--facts which establish that the challenged policy was promulgated or ratified by the city's policymaker. Allen's complaint did not need to supply an answer to the legal question of the specific identity of the city's policy maker under the relevant statutory scheme. See Piotrowski v. City of Houston, 237 F. 3d 567, 578 (5th Cir. 2001).

Qualified immunity does not apply to public entities, so even if the officers were granted qualified immunity, the public entity would remain liable for judgment under Monell. Furthermore, the discovery of recorded statements of the officers, personnel, and internal affairs files and material for the Monell claim is not subject to the limited discovery. Full-scale discovery is permitted. The relevancy issue remains the issue under Monell.

For these reasons, the trial court should construe the First Amended complaint to contain the following claims against the defendants:

1.   Fourth and Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 for excessive force for the shooting of Mr. Allen against Defendant Officer Justin Hayes ("Hayes"), the right to life and the integrity of his person;

2.   Fourth Amendment right to be free from unreasonable searches and seizures because no probable cause existed to arrest Mr. Allen for a traffic violation, Class C Misdemeanor

3.   The apprehension of Mr. Allen by suing deadly force was subject to the Fourth Amendment reasonableness requirement;

4.    Texas Wrongful Death and Survivorship claims

5. Monell claims against the City of Houston based on the pattern, practices and customs of the City's policies, customs, practices and treatment of the mentally, ill, lack of effective Crisis Intervention Training and de-escalation tactics, lack of effective training in basic traffic stops, distinguishing High Risk Traffic Stop training, on traffic stops of the mentally ill, slow, uneducated (following the seven step commands) resulting in unlawful deaths and racial profiling of African-Americans and minorities. ROA.140-179

    Limited Circumstances where extrinsic evidence: Outside documents/videos are used to decide Rule 12(b)(6) Motions to dismiss

Even with authenticated videos viewed and audio Defendants do not show Mr. Allen posed a threat to Officer Justin Hayes before five of the six-gun shots fired during a routine traffic stop. Thus, Officer Hayes violated a clearly established law on November 4, 2015, by shooting the unarmed citizen without a good faith basis for shooting Mr. Allen. ROA.611-613

Although a court may consider documents attached to a motion to dismiss as part of the pleadings under limited circumstances, the court generally finds that the video attached is beyond the scope of permissible review under Federal Rule of Civil Procedure 12(b)(6). See, Heaney v. Roberts, Civil Action No. 14-2104, 2015WL 418177, at 3 n.1 (E.D. La. Jan. 30, 2015) (stating a video of the meeting at issue constitutes evidence outside the pleadings that cannot be considered in resolving a Rule 12(b) motion); Crowe v. Hoffman, Civil Action No. 12-687m, 2013 WL 357006 (E.D. La. Jan. 29, 2013) (converting a 12(b)(6) motion to dismiss into a motion for summary judgment where surveillance video was attached to the motion).

The videos, here in question in the John Allen case were not attached to but was referenced in the First Amended Complaint; however, there are videos of the underlying events and not a document--such as a contract--that gives rise to the right to sue. ROA.138-177 See, Collins v. Morgan Stanley Dean Witter, 224 F. 3d 496, 498-99 (5th Cir. 2000) (holding it is only proper to consider documents outside the pleadings on a motion to dismiss "if they are referred to in the plaintiff's

complaint and are central to her claim"). ROA. 140-179 The videos here merely record the events on which suit is based, it does not create the event on which suit is based. The underlying facts creating the right to suit would still exist absent the videos. Thus, the videos are not central to Plaintiffs' claims.

Under most circumstances, if the court decides to consider extrinsic materials, the motion must be converted into a motion for summary judgment. See Fed R. Civ. 12(d) which provides:

Result of Presenting Matters Outside the Pleadings. If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Here, the Plaintiffs and Defendants urged the Court to consider the video and the audio transcript when ruling on motions to dismiss. Where the Plaintiffs disagree is which version of the videos is the court to properly considered and if depositions of the officers at the scene, including but not limited to Salina and Hayes, as well as officers at the scene, affidavits, and statements of the officers relevant. Plaintiffs object to the authenticity of the videos produced on February 14, 2018. Three versions of the video of the passenger side shooting exist.ROA.126-127 Documents that are central to the claim and are authentic can be considered. Beddall v. State St. Bank & Trust Co.,137 F. 3d 12, 17 (1st Cir. 1998)

Noteworthy, the driver side officer, Tyler Salina, did not fire any of the six total gunshots that his fellow officer Hayes fired. Plaintiffs voluntarily dismissed claims against Officer Salina.

The first version of the passenger side video is the version that Allen's prior attorney, Arthur Schechter, provided to Plaintiffs' counsel. The second version of the video is the passenger side version defendants produced to the Plaintiffs on February 21, 2018, that was not viewable and accessible. ROA. 126-127, 131, On February 22, 2018, the court entered an order that "by February 23, 2018, at 10:00 a.m., the city of Houston must give John Allen, Jr., Lawon Allen, Jr., and the estate of Mr. John Allen, Sr., a disc that works" ROA. 131 and the third version is the version produced to the court without first or contemporaneously producing to Plaintiff's counsel during February 14, 2018, hearing. ROA.126-127 The authenticity of the third video is in dispute, and the Plaintiffs objected to its use. ROA.126-127

The trial court, however, in Allen elected to consider the version of the video tendered to the court clerk by the Defendants, the City of Houston and Justin Hayes on February 14, 2018.ROA. 126-127 In the trial court's Opinion on Dismissal, it indicated, "The complaint describes the videos, and the court considers them in its decision." ROA. 332:17-18 This decision was made without any advance notifications to the parties including plaintiffs of the court's intent to consider the

video until after the trial court ruled adversely against plaintiffs on the take-nothing judgment disposing of the entire case. ROA.336

By considering the video with the pleadings, the Motion to dismiss became a converted Motion for summary judgment and not a 12(b)6 Motion to Dismiss and thus subject to Rule 56. Federal Rule of Civil Procedure 12(b) authorizes the court to treat a motion to dismiss an action for failure to state a claim upon which relief can be granted as a motion for summary judgment under Rule 56 if matters outside the pleadings presented. In order to assure fair procedure, a court should not treat a 12(b)6 motion to dismiss as a motion for summary judgment unless the non-moving party has received reasonable notice that the response of the type required by Rule 56 must be filed.  ROA.364

In the rare instances in which a court treats a Rule 12(b)6 motion to dismiss as one for summary judgment, it does so only to proceed promptly to an inevitable disposition and avoid needless further filings by counsel. That is not Mr. Allen's case. ROA. 138-177 The court allows a party to gain an advantage by filing a Rule 12(b)(6) motion that refers to matters outside the pleadings (whether by attaching affidavits or through some other way) in the hope that it will be treated as a motion for summary judgment.

As a practical matter, the court may deny a Rule 12(b)6 motion to dismiss, which relies on facts asserted outside the pleadings. By referring to matters outside the pleadings, the moving party impliedly represents that the court should consider such material. Accepting that representation as correct, the court should deny the motion to dismiss unless the summary judgment is appropriate. Summary judgment is not appropriate before the opposing party has had a reasonable opportunity to file a response that demonstrates a dispute of material fact under Rule 56. See, Regina Harris v. Ron Hickman, Civil Action No. 4:17-cv-02830 (2017). The court in Allen did not place the parties on notice and afford an opportunity to respond to the Motion for Summary Judgment. Nor did the court enter an order expressly stating that the court is converting the Rule 12(b)6 motions to dismiss to motions for summary judgment. Rather the court referred to its ruling as an Opinion on Dismissal. ROA.332-335 When, in fact, it was the granting of summary judgment under Rule 56 with a take-nothing judgment. ROA.336, 364 Plaintiff, however, was simply ordered on February 14, 2018, to respond to the motion to dismiss. ROA.124

The trial court, in this case, converted Justin Hayes' and the City of Houston's motions to dismiss to a motion for summary judgment without notifying the plaintiff. ROA. 364 More importantly, the trial court did not afford the Plaintiffs an opportunity to respond, supplement its response, add additional evidence under Federal Rules 56 before dismissing this wrongful death/civil rights case with

prejudice. ROA. 138-177 Neither did the trial court allow Plaintiffs the requested opportunity to amend the complaint before its signed August 16, 2018, take nothing order dismissing the case with prejudice. ROA.

For these reasons if the trial court had accepted Allen's version of the facts as being true, the Motion to Dismiss should be denied because Mr. Allen's pleadings state a plausible Fourth Amendment cause of action under Section 1983 of excessive force, Monell claim, and the record does not indicate the court afforded Plaintiffs notice and an opportunity to supplement his response or respond to the extrinsic evidence in what amounts to a motion for summary judgment under Rule 56. Moreover, there were no sufficient grounds for a dismissal with prejudice—a take-nothing judgment on this record before this court. ROA.140-179. In an incomplete record, dismissal is not appropriate under the 12(b) 6 standards. Certainly, dismissal is not appropriate, here, under Rule 12(b)(6) with the affidavits and supplemental summary judgment evidence which Plaintiffs were provided limited discovery it could not use and deprived of conducting additional limited discovery on the qualified immunity issue, the depositions of the on-scene officers, including Justin Hayes and Tayler Salina. ROA.590 Depositions which are relevant in the claims against the individual and municipal defendants. ROA. 590 Full-scale discovery of relevant evidence for the Monell claims under Rule 56. ROA.590

# STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)6 for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. See Jackson v. Procunier,789 F. 2d 307, 309 (5th Cir. 1986).

A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff; and assume the truth of all pleaded facts." Oliver v. Scott, 276 F. 3d 736, 740 (5th Cir. 2002).

Rule 12(b)(6) motions test the formal sufficiency of the pleadings and are "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F. 3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. To defeat a motion to dismiss pursuant to Rule 12(b) (6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief". Id.

## B. Applicable Law

"While it is not clear just when minimal police interference becomes a seizure there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) (citation omitted). Thus, a deadly force complaint under § 1983 brought by a free citizen must be analyzed according to Fourth Amendment standards. See Stroik v. Ponsetti, 35 F. 3d 155, 157 (5th Cir. 1994). Drain v. Galveston County, 999 F. Supp. 929, 933 (S.D. Tex. 1998).

In individual capacity §1983 suits, the Fifth Circuit applies a heightened pleading standard, which requires Plaintiff to plead facts with particularity, focusing specifically on the conduct of the individual who caused the injury. See Elliot v. Perez, 751 F. 2d 1472, 1479 ( 5th Cir. 1985).

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b) (6) motion to dismiss". Guidry v. Am Pub. Life Ins. Co. 512 F. 3d 177, 180 (5th Cir. 2007). The court must accept all well-pleaded facts in the complaint as true. Kaiser Aluminum & Chem Sales, Inc. v. Avondale Shipyards, Inc. 677 F. 2d 1045, 1050 (5th Cir. 1982).

A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead. Colston v. Banhart, 130 F. 3d 96, 103(5th Cir.)

Deadly force cases pose a unique evidentiary problem because the police officer defendants and their colleagues are often the only surviving eyewitnesses, while the person most likely to contradict their story is dead. Ludwig v. Anderson, 54 F. d 465, 470 (8th Cir.) fn. 3.

C. Section 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed. 2d 662 (1986) Piotrowski v. City

of Houston, 51 F. 3d 512, 515 (5th Cir. 1995). A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994). Plaintiffs suing public officials under §1983 must file short and plain complaints that must be factual and not conclusive. Schultea v. Wood, 47 F. 3d 1427, 1433 (5th Cir. 1995) (en banc).

### D. Qualified Immunity

In Scheurer v. Rhodes, 416 U. S. 232, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974), the Supreme Court held that if the defendant asserts qualified immunity, the complaint should generally not be dismissed for failure to state a claim because the issue of whether immunity applies is a factual question related to the merits. Id at 250, 94 S.Ct. at 1693.

Generally, government officials performing discretionary functions have qualified immunity, which shields against civil damages liability, so long as the official's actions are reasonable in view of pre-existing law. Anderson v. Creighton, 482 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). To determine whether defendant is entitled to qualified immunity, we ask: (1) whether the facts, taken in the light most favorable to the party asserting the injury, show that the defendants'

conduct violated a constitutional right, and (2) whether the right violated was clearly established at the time of the defendants' alleged conduct. See, Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed. 2d 565 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001) overruled in part by Pearsons, 555 U.S. at 236, 129 S.Ct. 808). While it is often appropriate to answer these two questions sequentially, courts are allowed to exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id at 236, 129 S.Ct. 808.

"Clearly established' means that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Thompsons v. Upshur County., 245 F. 3d 447, 456 (5th Cir. 2001) (quoting Anderson, 482 U.S. at 640, 107 S.Ct. 3034). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." Id (citation omitted). The "defendant's circumstances" includes facts that the defendant knows. Id. "However, because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity" Id.

(citation omitted). An official is eligible for qualified immunity even if the official violates another's constitutional rights". Id. (citation omitted). "The Supreme Court has characterized the [doctrine of qualified immijnity] as protecting a 'all but the plainly incompetent or those who knowingly violate the law." Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F. 3d 273, 284 (5th Cir. 2002). (quoting Malley v. Briggs, 47 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed. 2d 271 (1986)).

"Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury" Brown v. Callahan, 623 F. 3d 249, 253 (5th Cir. 2010).

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests this Court to reverse the district court's grant of the motion to dismiss in favor of Appellees and remand the case back to the district court for further proceedings in accordance with this Court's decision.

SUBMITTED BY:

S/Debra V. Jennings
Debra V. Jennings
SBN: 10631850
6140 Highway 6
Missouri City, TX
77459-3802

# CERTIFICATE OF SERVICE

I certify that on August 23, 2019, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

If applicable include:

I further certify that a paper copy of the foregoing document was forwarded via U.S. Mail on today's date to the following parties/counsel:

Dennis  Jackson

City of Houston

901 Bagby

Houston, TX 77002

S/Debra V. Jennings

# CERTIFICATE OF SERVICE

I certify that on July 16, 2019 the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF sues

/s/ Debra V. Jennings

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f):  this document contains9,476 words.

2.   This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in font size 14 using Time New Roman.

S/Debra V. Jennings

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the mot recent version of AVG Internet Security Business Edition and is free of viruses.